IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:20-CV-574-KDB-DCK

| | |
|---|---|
| ASHLEY BOLTON, o/b/o K.B., | ) |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM AND** |
| | ) **RECOMMENDATION** |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 19) and "Defendant's Motion For Summary Judgment" (Document No. 22). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment be denied; that "Defendant's Motion For Summary Judgment" be granted; and that the Commissioner's decision be affirmed.

### I. BACKGROUND

Plaintiff, through counsel, seeks judicial review of an unfavorable administrative decision on an application for disability benefits. (Document No. 1). On or about March 27, 2017, Plaintiff filed an application on behalf of K.B., a minor child, for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383, alleging a disabling condition beginning June 11, 2012. (Transcript of the Record of Proceedings ("Tr.") 10). The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on August 23, 2017, and again after reconsideration on February 16, 2018. (Tr. 10, 73, 80). In its "Notice of

Disapproved Claim," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. In making this determination, we have considered your condition, and we have determined that it does not result in marked and severe functional limitations. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 80).

Plaintiff filed a timely written request for a hearing on April 10, 2018. (Tr. 10, 84-86). On August 28, 2019, Plaintiff appeared and testified at a hearing before Administrative Law Judge Todd D. Jacobson (the "ALJ"). (Tr. 10, 28-47). In addition, Quentin Sanders, Plaintiff's attorney for the hearing, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on December 10, 2019, denying Plaintiff's claim. (Tr. 7-18). On February 7, 2020, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on August 21, 2020. (Tr. 1, 145-147). The ALJ decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on October 19, 2020. (Document No. 1). On November 3, 2020, the undersigned was assigned to this case as the referral Magistrate Judge.

Plaintiff's "Motion For Summary Judgment" (Document No. 19) and "Plaintiff's Memorandum in Support of Motion for Summary Judgment" (Document No. 20) were filed August 2, 2021; and "Defendant's Motion For Summary Judgment" (Document No. 22) and "Memorandum Of Law In Support Of Defendant's Motion For Summary Judgment" (Document

No. 23) were filed September 30, 2021. Plaintiff timely filed "Plaintiff's Response to Defendant's Motion for Summary Judgment" (Document No. 24) on October 13, 2021.

The pending motions are ripe for review and a recommendation to the Honorable Kenneth D. Bell.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the

3

medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). "[A] reviewing court must uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Peace v. Berryhill, 2019 WL 2406626, at *1 (4th Cir. June 7, 2019) (quoting Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017)). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether K.B. was under a "disability" as that term of art is defined for Social Security purposes, between March 27, 2017, and the date of the ALJ decision.[1] (Tr. 10). To establish entitlement to benefits, Plaintiff has the burden of proving disability within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a three-step sequential evaluation process for determining if a person under age 18 is disabled. 20 C.F.R. § 416.924(a). The three steps are:

> (1) whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments - if no, not disabled;
>
> (3) whether claimant has an impairment or combination of impairments that meets, medically equals, or functionally equals one of the listings in appendix 1 - if yes and meets the duration requirement, disabled.

---

[1] Under the Social Security Act, 42 U.S.C. § 1382c(a)(3)(C)(i), "[a]n individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted and can be expected to last for a continuous period of not less than 12 months."

4

20 C.F.R. §§ 416.924(a)-(d).

In this case, the ALJ determined at the third step of the process that Plaintiff was not disabled. (Tr. 11).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since March 27, 2017, the application date. (Tr. 11). At the second step, the ALJ found that "oppositional defiant disorder and impulse control and conduct disorder" were severe impairments.[2] (Tr. 11). At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met, medically equaled, or functionally equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1. (Tr. 11-12).

Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, between March 27, 2017, and the date of the decision, December 10, 2019. (Tr. 17-18).

Plaintiff on appeal to this Court makes the following assignments of error: (1) "[t]he Commissioner's final decision denying K.B.'s application for benefits is constitutionally defective;" and (2) "[t]he ALJ errored in not finding K.B. met Listing 112.08." (Document No. 20). The undersigned will discuss each of these contentions in turn.

**A.      Constitutionality of ALJ's Decision**

Plaintiff argues first that "[t]he Commissioner's final decision is constitutionally defective, and remand is required" because the Social Security Administration's "structure unconstitutionally violated separation of power[s]." (Document No. 20, p. 16). According to Plaintiff, "[a]n executive agency unconstitutionally violates separation of powers when it is led by a single head

---

[2] The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage. See Bowen v. Yuckert, 482 U.S. 137 (1987).

who serves for six years and can only be removed by the President for cause." Id. at pp. 15-16 (citing Seila Law LLC v. CFPB, 140 S. Ct. 2183 (2020)). She contends that the "ALJ and Appeals Council judges deciding K.B.'s case derived their authority from then-Commissioner Andrew Saul," who Plaintiff argues "was unconstitutionally appointed." Id. at pp. 16, 18. Thus, because of his unconstitutional appointment, "the delegation of his authority to the ALJ and Appeals Council is similarly unconstitutional." Id. at p. 18. Oddly, though, her argument focuses on the statute and case law regarding *removal* of the Commissioner and his or her tenure protection – not the law regarding his or her *appointment*. See (Document No. 20, p. 16).

Defendant concedes that "[t]he parties agree that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (Document No. 23, p. 4). But, Defendant contends, "that conclusion does not support setting aside an unfavorable SSA disability benefits determination." Id. at p. 5 (citing Collins v. Yellen, 141 S. Ct. 1761, 1787-89 (2021)). Indeed, from Defendant's perspective, "Plaintiff cannot conceivably show how the President's supposed inability to remove the Commissioner without cause might possibly have affected any ALJ's disability benefits decision, much less the decision on Plaintiff's specific claim." Id. at p. 10. Defendant also highlights that Plaintiff is incorrect that there was any defect in the Commissioner's or the ALJ's *appointment*. Id. at p. 9. Rather, the issue here concerns the restrictions on *removal* of the Commissioner. Id. Defendant contends only that Plaintiff cannot satisfy the bar set by the Supreme Court in Collins to show that the removal restriction itself "inflict[ed] compensable harm" upon Plaintiff by "somehow caus[ing] the denial of K.B.'s benefits claim." Id. at p. 10 (citing Collins, 141 S. Ct. at 1789). Thus, Defendant argues that no remand is required.

6

Defendant is correct. Plaintiff is not entitled to relief on this issue because the Court does not find any constitutional problem with the ALJ's decision. Irrespective of who *appointed* the ALJ in this case – that is, an Acting Commissioner or a presidentially-appointed Commissioner, Plaintiff's argument still falls flat because she has not proven any causation between the *removal* provision and the ALJ's decision in her individual case. The Court agrees with Defendant that Plaintiff's statement about the propriety of the Commissioner's appointment—and therefore, the ALJ's delegation of authority—is the incorrect approach to this issue. Indeed, one court in this district has explained the rationale for such a conclusion as follows:

> Recently, in Collins v. Yellen, 141 S. Ct. 1761 (2021), the Supreme Court held that where an unconstitutional statutory removal restriction exists, a plaintiff seeking relief on that basis must show that the restriction caused his alleged harm. In Collins, the Court reasoned that the relevant agency officials were "properly appointed" pursuant to a statute that exhibited "no constitutional defect in the…method of appointment" and that "the unlawfulness of [a] removal provision" does not strip [an official] of the power to undertake the other responsibilities of his office[.]" The Court continued that "there is no reason to regard any of the actions taken" by the agency during this period "as void." Id. at 1787, 1788 n.23. In this case, Plaintiff, as in Collins, grounds his constitutional challenge only on the relevant removal restriction not on the propriety of the Commissioner's appointment and offers no evidence to show that there is a nexus between the unconstitutional removal restriction and the denial of his application for disability benefits. The Plaintiff simply argues that all actions taken by the Commissioner – and in turn his appointed ALJ's – are void due to the unconstitutional removal provision. However, Collins expressly rejects this view. Id. Therefore, the final decision of the ALJ is not constitutionally defective.

Boger v. Kijakazi, 1:20-CV-331-KDB, 2021 WL 5023141, at *3 (W.D.N.C. Oct. 28, 2021).

Plaintiff cites comments from President Biden about Commissioner Saul that she suggests demonstrate the requisite showing of harm under Collins. See (Document No. 24, pp. 2-3) (citing 141 S. Ct. at 1789). However, the undersigned finds this argument unpersuasive. Although

7

"President Biden was publicly critical of [Commissioner] Saul, Plaintiff does not show that the President asserted that but for the statute he would have removed" him. Edwards v. Comm'r of Soc. Security, 2022 WL 3352298, at *3 (W.D.N.C. Aug. 12, 2022). Moreover, "no lower court enjoined President Biden from terminating" Saul. Id. Those scenarios—which the Plaintiff has not shown occurred here—would be examples of harm on account of the existence of an unconstitutional removal provision as outlined by Collins. 141 S. Ct. at 1789. Plaintiff instead merely speculates as to the harm.

Plaintiff here, as in the Boger case, has not demonstrated the causal nexus between the unconstitutional statutory removal restriction and her denial of disability benefits.[3] For that reason, she is not entitled to a new hearing.

**B.      Listing 112.08**

Plaintiff argues in her second assignment of error that "[t]he ALJ errored in not finding K.B. met Listing 112.08." (Document No. 20, p. 19). At the third step of an ALJ's analysis in determining whether a child is disabled, the ALJ evaluates whether the child claimant has "an impairment[] that meets, medically equals, or functionally equals the listings." 20 C.F.R. § 416.924(a). An impairment "meets the requirements of a listing when it satisfies all of the criteria of that listing…and meets the duration requirement." 20 C.F.R. § 416.925(c)(3). An impairment "is medically equivalent to a listed impairment…if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a). Finally, an impairment is functionally equivalent to a listing where it "result[s] in 'marked' limitations in two domains of

---

[3] The Court "need not consider" Defendant's arguments against Plaintiff's entitlement to a new hearing based on the harmless error doctrine, the de facto officer doctrine, the rule of necessity, and prudential considerations because Plaintiff has failed to demonstrate the requisite causal connection that Collins requires. See Belanger v. Comm'r of Soc. Security, 5:21-CV-019-RJC, 2022 WL 3205183, at *3, n.2 (W.D.N.C. Aug. 8, 2022); (Document No. 23, pp. 12-17).

functioning or an 'extreme' limitation in one domain." 20 C.F.R. § 416.926a(a). Marked limitations "interfere[] seriously with [a claimant's] ability to independently initiate, sustain, or complete activities," and a marked limitation is "more than moderate" but "less than extreme." Id. at § 416.926a(e)(2)(i). On the other hand, an extreme limitation "interferes *very* seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." Id. at § 416.926a(3)(i) (emphasis added).

The relevant listing to the ALJ's decision here is Listing 112.08, which covers personality and impulse-control disorders. See 20 C.F.R. § 404, Subpart P, App. 1. For children, to meet the listing, both paragraph A and paragraph B must be satisfied. Id. To satisfy paragraph A, there must be "[m]edical documentation of a pervasive pattern of *one or more of the following*" limitations: (1) "[d]istrust and suspiciousness of others; (2) "[d]etachment from social relationships; (3) "[d]isregard for and violation of the rights of others; (4) "[i]nstability of interpersonal relationships; (5) "[e]xcessive emotionality and attention seeking;" (6) "[f]eelings of inadequacy;" (7) "[e]xcessive need to be taken care of;" (8) "[p]reoccupation with perfectionism and orderliness;" or (9) "[r]ecurrent, impulsive, aggressive behavioral outbursts." Id. (emphasis added). And, to satisfy paragraph B, there must be extreme limitation of one, or marked limitation of two of the following areas: (1) "[u]nderstand, remember, or apply information; (2) "[i]nteract with others;" (3) "[c]oncentrate, persist, or maintain pace;" and (4) "[a]dapt or manage oneself." Id.

The ALJ found that neither paragraph A nor paragraph B were satisfied, and therefore, Plaintiff did not meet or medically equal Listing 112.08. (Tr. 11). In reaching such a conclusion, the ALJ acknowledged that "the record documents a history of aggressive or behavioral outbursts," but then highlighted that "more recent treatment records show that these episodes decreased as a

9

result of therapeutic intervention and medication." (Tr. 11-12) (citing Tr. 496, 497, 996, 1028-31, 1064-65, 1092, 1094-95, 1124-25, 1155-56).

The ALJ further found that "the claimant does not have an impairment or combination of impairments that functionally equals a listing." (Tr. 17). In order to evaluate whether a claimant has an impairment that functionally equals a listing, a claimant must have marked limitations in two of the following domains or an extreme limitation in one of the following domains: (1) "[a]cquiring and using information; (2) "[a]ttending and completing tasks; (3) "[i]nteracting and relating with others; (4) "[m]oving about and manipulating objects;" (5) "[c]aring for yourself;" and (6) "[h]ealth and physical well-being." 20 C.F.R. §§ 416.926a(b)(1), (d). Since the ALJ did not find that the claimant had "either 'marked' limitations in two domains of functioning or 'extreme' limitation in one domain of functioning," he found claimant not to have functionally met Listing 112.08. (Tr. 17).

### 1. ALJ's Assessment of K.B.'s Impairments Meeting or Medically Equaling Listing 112.08

Plaintiff first takes issue with the ALJ's assessment of whether he met or medically equaled Listing 112.08. He argues that K.B. demonstrated "disregard for and violation of the rights of others, excessive emotionality and attention seeking, and recurrent, impulsive, aggressive behavioral outbursts" – all of which would go towards satisfaction of paragraph A. (Document No. 20, p. 20). She highlights that the medical records show that claimant would "often hit or kick his teachers, peers, or siblings," which exemplifies his disregard for others. Id. She also contends that his "recurrent, impulsive, and aggressive behaviors are uncontroverted." Id.

Defendant, on the other hand, contends that the ALJ considered the evidence of claimant's aggressive outbursts, but cited other evidence demonstrating that there was no pervasive pattern

10

of any of the paragraph A criteria because his limitations have improved "as a result of therapeutic intervention and medication." (Tr. 12) (citing Tr. 496, 497, 996, 1028-31, 1064-65, 1092, 1094-95, 1124-25, 1155-56); see (Document No. 23, p. 20). Defendant is also right to point out that Plaintiff provides only "a brief paragraph" in support of her assertion that K.B. satisfied multiple paragraph A criteria. (Document No. 23, p. 19); see (Document No. 20, pp. 20-21). Notably, this paragraph does not contain sufficient argument or support to convince the Court that the ALJ erred in evaluating the paragraph A criteria or that Plaintiff has carried her burden towards demonstrating disability. Given that the ALJ considered and did not ignore the contrary evidence, Defendant is correct that Plaintiff is asking the Court to reweigh the evidence, which it explicitly is forbidden from doing. See Hays, 907 F.2d at 1456. The undersigned thus finds that the ALJ's finding regarding claimant not satisfying the paragraph A criteria for meeting or medically equaling the listing was supported by substantial evidence.

Furthermore, as for the paragraph B criteria, Defendant argues that "the ALJ correctly found that K.B. had marked, but not extreme, limitations in the domain of interacting and relating with others." (Document No. 23, p. 20). The ability to interact and relate with others bears on both whether claimant meets or medically equals Listing 112.08 and whether he functionally meets the listing. 20 C.F.R. §§ 416.926a(b)(1); 20 C.F.R. § 404, Subpart P, App. 1. Plaintiff argues that the ALJ should have found that his limitation in this area was "extreme." (Document No. 20, pp. 23-24). Since the undersigned concluded above that the ALJ's finding on the paragraph A criteria was supported by substantial evidence, there is no need to analyze his treatment of the paragraph B criteria – *both* paragraph A and paragraph B must be satisfied to meet or medically equal Listing 112.08. 20 C.F.R. § 404, Subpart P, App. 1. Moreover, other than the paragraph B criterion of interacting and relating with others, Plaintiff does not make argument about any ALJ error about

11

the other paragraph B criteria. For the reasons explained below, since the undersigned finds that the ALJ's determination that Plaintiff experienced "marked" limitation in the area of interacting and relating with others, paragraph B (requiring at least *two* findings of marked limitation on paragraph B criteria) would also not be satisfied. See 20 C.F.R. § 404, Subpart P, App. 1. Therefore, "[e]ven assuming Plaintiff has shown that K.B.'s records show one or more 'paragraph A' criteria," the ALJ's finding that K.B. did not meet Listing 112.08 "must be upheld." (Document No. 23, p. 20).

### 2. ALJ's Assessment of K.B.'s Impairments' Functional Equivalence to Listing 112.08

The undersigned will analyze the ALJ's assignment of severity of the limitation to interacting and relating with others because it also bears on whether the ALJ properly found that claimant did not *functionally* meet the listing. 20 C.F.R. §§ 416.926a(b)(1). In the functional domain of interacting and relating with others, the Commissioner evaluates a child's ability to "initiate and sustain emotional connections with others, develop and use the language of [his or her] community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others." 20 C.F.R. § 416.926a(i). For school-age children, typical benchmarks that the Commissioner looks for include the following:

> When you enter school, you should be able to develop more lasting friendships with children who are your age. You should begin to understand how to work in groups to create projects and solve problems. You should have an increasing ability to understand another's point of view and tolerate differences. You should be well able to talk to people of all ages, to share ideas, tell stories, and to speak in a manner that both familiar and unfamiliar listeners readily understand.

20 C.F.R. § 416.926a(i)(2)(iv). Moreover, some—but not exclusively—examples of limitations in this domain might include having no close friends, avoiding or withdrawing from others, having

difficulty playing games or rules-based sports, and having difficulty with communication. 20 C.F.R. §§ 416.926a(i)(3)(ii)-(vi).

As explained below, substantial evidence supports the ALJ's determination that K.B.'s limitation in this domain was "marked." Although the Plaintiff contends that K.B. instead had an "extreme" limitation in the interacting and relating with others domain, the ALJ cited substantial evidence that supports his "marked" determination. See (Document No. 20, pp. 21, 23-24). Indeed, although Plaintiff points to K.B.'s suspension from school for "attempt[ing] to kick" his teacher, what Plaintiff does not mention is that this suspension occurred in August 2017. (Tr. 277); see (Document No. 20, p. 22). Furthermore, the ALJ did not ignore this evidence – in fact, he specifically cited it in his analysis that ultimately concluded that K.B. had a marked limitation. (Tr. 14). While acknowledging that "in kindergarten education [here, referring to the suspension]…the claimant was disciplined on several occasions for engaging in aggressive, abusive, disrespectful, defiant, and self-injurious behaviors," he also acknowledges that K.B.'s behavior improved with the passage of time. (Tr. 14) (citing Tr. 287-290).

In fact, the ALJ highlights that "in first grade education records…the claimant could be respectful and cordial," while also "temperamental" and had "difficulty regulating verbally and physically aggressive behaviors." (Tr. 14) (citing Tr. 235-36, 252, 256, 264). And, although he "had to be sent home from school on occasion," "he generally has no difficulties interacting with peers or adults." (Tr. 14) (citing Tr. 241-42). In summer 2018, the ALJ highlighted that K.B. "was admitted into a partial hospitalization program," where "he demonstrated some progress in his behavior, including less frequent temper tantrums and improved focus." (Tr. 15) (citing Tr. 721, 997). Further, the ALJ cites reports from the record that he was "'doing good' overall with good response to medications" for his mental health. (Tr. 15) (citing Tr. 996, 1028-1031, 1064-

13

65, 1092, 1094-95, 1124-25, 1155-56). While the ALJ acknowledges K.B.'s mother's reports of "episodes of temper tantrums and aggressive behavior both at school and at home," he also notes that K.B. no longer received speech and language services. (Tr. 14) (citing Tr. 445, 456, 471, 1202). Moreover, his progress notes from Dr. Edwards apparently indicated—which the ALJ highlights—that K.B. "reportedly demonstrated improvements in regulating his emotions and monitoring his behavior when told 'no' or denied access to a privilege." (Tr. 15) (citing Tr. 496, 498). The ALJ even cites to his mother's comments in a report that K.B. "experiences little to no difficulty initiating or maintaining interpersonal exchanges with his peers, namely when participating in an activity of interest." (Tr. 471) (cited at Tr. 16).

Thus, there is substantial evidence for the ALJ's conclusion that K.B. had marked limitations in the functional domain of interacting and relating to others. He clearly acknowledges the claimant's "history of verbally and physically aggressive, impulsive, and defiant behavior," but he also points to specific evidence showing "a demonstrated progression of improvement throughout his course of treatment." (Tr. 16). As Defendant states, Plaintiff's arguments amount to "improperly asking for this Court to reweigh evidence already considered by the ALJ and [to] overturn findings that are supported by substantial evidence." (Document No. 23, p. 21). The Court is mindful that "the record is mixed," but it is nonetheless the role of this Court merely to ensure that "substantial evidence supports the ALJ's determination," not to "weigh [the] conflicting evidence" – a role assigned exclusively to the ALJ. Angelina P. o/b/o Angel M. v. Kijakazi, 2021 WL 3856206, at *4 (D. Conn. Aug. 30, 2021).

In the functional domain of attending and completing tasks, the Commissioner evaluates a child's ability "to focus and maintain [] attention, and how well [he or she] begin[s], carr[ies] through, and finish[es] [his or her] activities, including the pace at which [he or she] perform[s]

14

activities and the ease with which [he or she] change[s] them." 20 C.F.R. § 416.926a(h). Among other examples, the Commissioner looks for evidence of ability "to focus [] attention in a variety of situations in order to follow directions," "to change [] activities or routines without distracting [oneself] or others, and stay on task and in place when appropriate." 20 C.F.R. § 416.926a(h)(2)(iv). Some examples of limitations in this domain might include "repeatedly becom[ing] sidetracked from [] activities or [] frequently interrupt[ing] others," becoming "easily frustrated and giv[ing] up on tasks, including ones [that one is] capable of completing," and "requir[ing] extra supervision to keep [an individual] engaged in an activity." 20 C.F.R. §§ 416.926a(h)(3)(iii)-(v).

The undersigned finds that substantial evidence supports the ALJ's determination that K.B. had a "less than marked" limitation in attending and completing tasks. Although Plaintiff argues that "[t]he ALJ [] relied on [K.B.'s kindergarten teacher's] teacher questionnaire and did not acknowledge evidence about K.B.'s inability to follow directions, tolerate change in activities, being a distraction, staying on tasks, an[d] transitioning between activities," the Court concludes that the ALJ *did* consider this evidence – Plaintiff is just dissatisfied with the way in which the ALJ weighed this evidence. (Document No. 20, p. 24). The ALJ explicitly cites [K.B.'s kindergarten teacher's] questionnaire that indicates claimant's "slight problems sustaining attention during play, paying attention when spoken to directly, organizing things, completing work accurately, and working without distracting others." (Tr. 15) (citing Tr. 205, 206). Later, though, K.B. demonstrated improvement in this functional domain, and the ALJ highlights records from 2019 that K.B. does have some "difficulties staying on task and require[s] redirection, [but] it was also noted that he was able to self-correct when focused and realizes when he makes mistakes." (Tr. 15) (citing Tr. 235, 237). The ALJ further cites to records from a psychological

15

report evaluating examinations with K.B. throughout late 2018 from Dr. Edwards, who indicates that although K.B. had a "frequent tendency to self-correct answers that he had provided[,]…his behavior was not in excess of what would be expected for a child his age given the tasks at hand." (Tr. 16) (citing Tr. 480). Finally, the ALJ gave "somewhat persuasive" weight to the medical opinions of four state agency experts who opined "that the claimant would have…less than marked limitation in attending and completing tasks." (Tr. 17) (citing Tr. 48-57, 59-71).

As Defendant accurately states, "Plaintiff is asking to reweigh the available evidence to find limitations more conducive to their desired outcome." (Document No. 23, p. 23). The ALJ clearly weighed evidence suggesting that K.B. had some limitations "affect[ing] his ability to attend to or complete tasks," but he also considered other evidence that suggested improvement in this domain and K.B.'s ability to refocus to complete tasks when redirected. Id. Plaintiff's argument that the ALJ should have assigned a marked limitation to K.B.'s functioning in the attending and completing tasks domain would require the Court to independently reevaluate evidence and reweigh it – which is the province of the ALJ *only*, not the district court. Hays, 907 F.2d at 1456. The undersigned therefore concludes that substantial evidence supports the ALJ's determination that K.B. has a "less than marked" limitation in the domain of attending and completing tasks. The ALJ's conclusion that K.B. did not functionally meet Listing 112.08 is therefore supported by substantial evidence on account of the undersigned's analysis that his assignment of "marked" and "less than marked" limitation to interacting and relating with others and attending and completing tasks, respectively, was supported by substantial evidence. See 20 C.F.R. § 416.926a(a) (requiring that to functionally meet a listing, a claimant must have "marked" limitations in at least two domains of functioning or an "extreme" limitation in one domain).

## IV. CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: Plaintiff's "Motion For Summary Judgment" (Document No. 19) be **DENIED**; the "Defendant's Motion For Summary Judgment" (Document No. 22) be **GRANTED**; and the Commissioner's determination be **AFFIRMED**.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); United States v. Benton, 523 F.3d 424, 428 (4th Cir. 208). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the

objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed: August 23, 2022

David C. Keesler
United States Magistrate Judge